(Slip Opinion) OCTOBER TERM, 2005 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ARBAUGH *v.* Y & H CORP. DBA THE MOONLIGHT CAFE

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 04–944.   Argued January 11, 2006—Decided February 22, 2006

Title VII of the Civil Rights Act of 1964 makes it unlawful for "an employer . . . to discriminate against any [employee] with respect to . . . sex," 42 U. S. C. §2000e–2(a)(1), and defines "employer" as "a person . . . who has fifteen or more employees," §2000e(b).  The Act's jurisdictional provision empowers federal courts to adjudicate civil actions "brought under" Title VII.  §2000e–5(f)(3).  Title VII actions also fit within the Judicial Code's grant of subject-matter jurisdiction to federal courts over actions "arising under" federal law.   28 U. S. C. §1331.  At the time Title VII was enacted, §1331 contained a $10,000 amount-in-controversy threshold, which left Title VII claims below that amount uncovered.   Section 2000e–5(f)(3) assured that the amount-in-controversy limitation would not impede a Title VII complainant's access to a federal forum.   Since 1980, when Congress amended §1331 to eliminate the amount-in-controversy threshold, §2000e–5(f)(3) has served simply to underscore Congress' intention to provide a federal forum for Title VII claims.  Because Congress has also authorized federal courts to exercise "supplemental" jurisdiction over state-law claims linked to a federal claim, 28 U. S. C. §1367, Title VII plaintiffs may pursue complete relief in federal court.

The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised at any stage in the litigation, even after trial and the entry of judgment, Rule 12(h)(3). See *Kontrick* v. *Ryan,* 540 U. S. 443, 455.  By contrast, the objection that a complaint "fail[s] to state a claim upon which relief can be granted," Rule 12(b)(6), endures only up to, not beyond, trial on the merits, Rule 12(h)(2).

Petitioner Arbaugh sued her former employer, respondent Y&H

Corporation, in Federal District Court, charging sexual harassment in violation of Title VII and asserting related state-law claims. The case was tried to a jury, which returned a verdict for Arbaugh. After the court entered judgment on that verdict, Y&H moved to dismiss the entire action for want of federal subject-matter jurisdiction, asserting, for the first time, that it had fewer than 15 employees on its payroll and therefore was not amenable to suit under Title VII. Although recognizing the unfairness and waste of judicial resources that granting the motion would entail, the District Court, citing Federal Rule 12(h)(3), considered itself obliged to do so because it believed the 15-or-more-employees requirement to be jurisdictional. It therefore vacated its prior judgment and dismissed Arbaugh's Title VII claim with prejudice and her state-law claims without prejudice. The Fifth Circuit affirmed based on its precedent holding that unless the employee-numerosity requirement is met, federal-court subject-matter jurisdiction does not exist.

*Held:* Title VII's numerical threshold does not circumscribe federal-court subject-matter jurisdiction. Instead, the employee-numerosity requirement relates to the substantive adequacy of Arbaugh's Title VII claim, and therefore could not be raised defensively late in the lawsuit, *i.e.*, after Y&H had failed to assert the objection prior to the close of trial on the merits. The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U. S. C. §1331, which provides for "[f]ederal-question" jurisdiction, and §1332, which provides for "[d]iversity of citizenship" jurisdiction. A plaintiff properly invokes §1331 jurisdiction when she pleads a colorable claim "arising under" the Federal Constitution or laws. See *Bell* v. *Hood,* 327 U. S. 678, 681–685. She invokes §1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. See §1332(a). Arbaugh invoked federal-question jurisdiction under §1331, but her case "aris[es]" under a federal law, Title VII, that specifies, as a prerequisite to its application, the existence of a particular fact, *i.e.*, 15 or more employees. The Court resolves the question whether that fact is "jurisdictional" or relates to the "merits" of a Title VII claim mindful of the consequences of typing the 15-employee threshold a determinant of subject-matter jurisdiction, rather than an element of Arbaugh's claim for relief. First, "subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States* v. *Cotton,* 535 U. S. 625, 630. Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. *Ruhrgas AG* v. *Marathon Oil Co.,* 526 U. S. 574, 583. Nothing in Title VII's text indicates that

Syllabus

Congress intended courts, on their own motion, to assure that the employee-numerosity requirement is met. Second, in some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own. If satisfaction of an essential element of a claim is at issue, however, the jury is the proper trier of contested facts. *Reeves* v. *Sanderson Plumbing Products, Inc.,* 530 U. S. 133, 150–151. Third, when a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety. Thus, the trial court below dismissed, along with the Title VII claim, pendent state-law claims fully tried by a jury and determined on the merits. In contrast, when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to §1367, over pendent state-law claims.

While Congress could make the employee-numerosity requirement "jurisdictional" if it so chose, neither §1331 nor Title VII's jurisdictional provision, 42 U. S. C. §2000e–5(f)(3), specifies any threshold ingredient akin to 28 U. S. C. §1332's monetary floor. Instead, the 15-employee threshold appears in a separate provision that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes* v. *Trans World Airlines, Inc.,* 455 U. S. 385, 394. Given the unfairness and waste of judicial resources entailed in tying the employee-numerosity requirement to subject-matter jurisdiction, the sounder course is to refrain from constricting §1331 or §2000e–5(f)(3), and to leave the ball in Congress' court. If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character. Applying that readily administrable bright line here yields the holding that Title VII's 15-employee threshold is an element of a plaintiff's claim for relief, not a jurisdictional issue. Pp. 8–15.

380 F. 3d 219, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which all other Members joined, except ALITO, J., who took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–944

JENIFER ARBAUGH, PETITIONER *v.* Y & H COR-PORATION, DBA THE MOONLIGHT CAFE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[February 22, 2006]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the distinction between two sometimes confused or conflated concepts: federal-court "subject-matter" jurisdiction over a controversy; and the essential ingredients of a federal claim for relief. Title VII of the Civil Rights Act of 1964 makes it unlawful "for an employer . . . to discriminate," *inter alia*, on the basis of sex. 42 U. S. C. §2000e–2(a)(1). The Act's jurisdictional provision empowers federal courts to adjudicate civil actions "brought under" Title VII. §2000e–5(f)(3). Covering a broader field, the Judicial Code gives federal courts subject-matter jurisdiction over all civil actions "arising under" the laws of the United States. 28 U. S. C. §1331. Title VII actions fit that description. In a provision defining 13 terms used in Title VII, 42 U. S. C. §2000e, Congress limited the definition of "employer" to include only those having "fifteen or more employees," §2000e(b). The question here presented is whether the numerical qualification contained in Title VII's definition of "employer" affects federal-court subject-matter jurisdiction or, instead, delineates a substantive ingredient of a Title VII

claim for relief.

The question arises in this context. Jenifer Arbaugh, plaintiff below, petitioner here, brought a Title VII action in federal court against her former employer, defendant-respondent Y&H Corporation (hereinafter Y&H), charging sexual harassment. The case was tried to a jury, which returned a verdict for Arbaugh in the total amount of $40,000. Two weeks after the trial court entered judgment on the jury verdict, Y&H moved to dismiss the entire action for want of federal subject-matter jurisdiction. For the first time in the litigation, Y&H asserted that it had fewer than 15 employees on its payroll and therefore was not amenable to suit under Title VII.

Although recognizing that it was "unfair and a waste of judicial resources" to grant the motion to dismiss, App. to Pet. for Cert. 47, the trial court considered itself obliged to do so because it believed that the 15-or-more-employees requirement was jurisdictional. We reject that categorization and hold that the numerical threshold does not circumscribe federal-court subject-matter jurisdiction. Instead, the employee-numerosity requirement relates to the substantive adequacy of Arbaugh's Title VII claim, and therefore could not be raised defensively late in the lawsuit, *i.e.*, after Y&H had failed to assert the objection prior to the close of trial on the merits.

I

We set out below statutory provisions and rules that bear on this case. Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U. S. C. §2000e–2(a)(1). To spare very small businesses from Title VII liability, Congress pro-

vided that:

> "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." §2000e(b).[1]

This employee-numerosity requirement[2] appears in a section headed "Definitions," §2000e, which also prescribes the meaning, for Title VII purposes, of 12 other terms used in the Act.[3]

Congress has broadly authorized the federal courts to exercise subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U. S. C. §1331. Title VII surely is a "la[w] of the United States." *Ibid.* In 1964, however, when Title VII was enacted, §1331's umbrella provision for federal-question jurisdiction contained an amount-in-controversy limitation: Claims could not be brought under §1331 unless the amount in controversy exceeded $10,000. See §1331(a) (1964 ed.). Title VII, framed in that light, assured that the amount-in-controversy limitation would not impede an employment-discrimination complainant's

---

[1] The same provision further states that the term "employer" does not include the United States, corporations wholly owned by the United States, Indian Tribes, certain departments and agencies of the District of Columbia, or tax-exempt "bona fide private membership club[s]" (other than labor organizations). §2000e(b).

[2] Congress originally prescribed a 25-or-more-employee threshold, Civil Rights Act of 1964, §701, 78 Stat. 253, but lowered the minimum number of employees to 15 in the Equal Employment Opportunity Act of 1972, §2, 86 Stat. 103.

[3] The other terms defined in §2000e are: "person," "employment agency," "labor organization," "employee," "commerce," "industry affecting commerce," "State," "religion," "because of sex," "complaining party," "demonstrates," and "respondent."

access to a federal forum.  The Act thus contains its own
jurisdiction-conferring provision, which reads:

> "Each United States district court and each United
> States court of a place subject to the jurisdiction of the
> United States shall have jurisdiction of actions
> brought under this subchapter."  42 U. S. C. §2000e–
> 5(f)(3).[4]

Congress amended 28 U. S. C. §1331 in 1980 to eliminate
the amount-in-controversy threshold.  See Federal Ques-
tion Jurisdictional Amendments Act of 1980, §2, 94 Stat.
2369.  Since that time, Title VII's own jurisdictional provi-
sion, 42 U. S. C. §2000e–5(f)(3), has served simply to
underscore Congress' intention to provide a federal forum
for the adjudication of Title VII claims.  See Brief for
United States as *Amicus Curiae* 13; Tr. of Oral Arg. 4.

We note, too, that, under 28 U. S. C. §1367, federal
courts may exercise "supplemental" jurisdiction over state-
law claims linked to a claim based on federal law.[5]  Plain-
tiffs suing under Title VII may avail themselves of the
opportunity §1367 provides to pursue complete relief in a
federal-court lawsuit.  Arbaugh did so in the instant case
by adding to her federal complaint pendent claims arising
under state law that would not independently qualify for

–––––––––

[4] Title VII contains a separate jurisdictional provision, 42 U. S. C.
§2000e–6(b), authorizing suits by the Government to enjoin "pattern or
practice" discrimination.

[5] Section 1367(a) states: "Except as provided in subsections (b) and (c)
or as expressly provided otherwise by Federal statute, in any civil
action of which the district courts have original jurisdiction, the district
courts shall have supplemental jurisdiction over all other claims that
are so related to claims in the action within such original jurisdiction
that they form part of the same case or controversy under Article III of
the United States Constitution.  Such supplemental jurisdiction shall
include claims that involve the joinder or intervention of additional
parties."

federal-court adjudication.

The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. Rule 12(h)(3) instructs: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." See *Kontrick* v. *Ryan,* 540 U. S. 443, 455 (2004). By contrast, the objection that a complaint "fail[s] to state a claim upon which relief can be granted," Rule 12(b)(6), may not be asserted post trial. Under Rule 12(h)(2), that objection endures up to, but not beyond, trial on the merits: "A defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading . . . or by motion for judgment on the pleadings, or at the trial on the merits." Cf. *Kontrick,* 540 U. S., at 459.

II

From May 2000 through February 2001, Jenifer Arbaugh worked as a bartender and waitress at the Moonlight Cafe, a New Orleans restaurant owned and operated by Y&H. Arbaugh alleged that Yalcin Hatipoglu, one of the company's owners, sexually harassed her and precipitated her constructive discharge.[6] In November 2001, Arbaugh filed suit against Y&H in the United States District Court for the Eastern District of Louisiana. Her complaint asserted claims under Title VII and Louisiana law. App. to Pet. for Cert. 1–2.

Arbaugh's pleadings alleged that her federal claim "ar[o]se under Title VII" and that the Federal District

---

[6] See *Pennsylvania State Police* v. *Suders,* 542 U. S. 129, 147 (2004) (constructive discharge compensable under Title VII includes an employee's departure due to sexual harassment that renders "working conditions so intolerable that a reasonable person would have felt compelled to resign").

Court had jurisdiction over this claim under §1331 plus supplemental jurisdiction over her state-law claims under §1367. Record in No. 01–3376 (ED La.), Doc. 3, p. 1 (Amended Complaint). Y&H's responsive pleadings admitted Arbaugh's "jurisdictional" allegations but denied her contentions on the merits. *Id.*, Doc. 4, p. 1 (Answer to Complaint). The pretrial order submitted and signed by the parties, and later subscribed by the presiding judge, reiterated that the court was "vested with jurisdiction over [Arbaugh's Title VII claim] pursuant to 28 U. S. C. §1331," and "ha[d] supplemental jurisdiction over [her] state law claims pursuant to 28 U. S. C. §1367." *Id.*, Doc. 19, p. 2. The order listed "Uncontested Material Facts," including: "Plaintiff was employed as a waitress/bartender at the Moonlight for Defendants from May, 2000 through February 10, 2001 when she terminated her employment with the company." *Id.*, p. 3. It did not list among "Contested Issues of Fact" or "Contested Legal Issues" the question whether Y&H had the requisite number of employees under 42 U. S. C. §2000e(b). Record, Doc. 19, pp. 4–5. Nor was the issue raised at any other point pretrial or at trial.

The parties consented to trial before a Magistrate Judge. See 28 U. S. C. §636(c). After a two-day trial, the jury found that Arbaugh had been sexually harassed and constructively discharged in violation of Title VII and Louisiana antidiscrimination law. The verdict awarded Arbaugh $5,000 in backpay, $5,000 in compensatory damages, and $30,000 in punitive damages. The trial court entered judgment for Arbaugh on November 5, 2002.

Two weeks later, Y&H filed a motion under Federal Rule 12(h)(3) to dismiss Arbaugh's complaint for lack of subject-matter jurisdiction. Record, Doc. 44. As sole ground for the motion, Y&H alleged, for the first time in the proceedings, that it "did not employ fifteen or more employees [during the relevant period] and thus is not an employer for Title VII purposes." *Id.*, p. 2 (Memorandum

in Support of Rule 12(h)(3) Motion to Dismiss for Lack of Subject Matter Jurisdiction). The trial court commented that "[i]t is unfair and a waste of judicial resources to permit [Y&H] to admit Arbaugh's allegations of jurisdiction, try the case for two days and then assert a lack of subject matter jurisdiction in response to an adverse jury verdict." App. to Pet. for Cert. 47. Nevertheless, reciting the text of Rule 12(h)(3), see *supra*, at 5, the trial court allowed Y&H to plead that it did not qualify as an "employer" under Title VII's definition of that term. App. to Pet. for Cert. 47–48; see *supra*, at 3.

Discovery ensued. The dispute over the employee count turned on the employment status of Y&H's eight drivers, engaged to make deliveries for the restaurant, and the company's four owners (the Moonlight Cafe's two managers and their shareholder spouses). As the trial court noted, "[i]f either the delivery drivers or the four owners are counted with the persons shown on the payroll journals, then Y&H employed fifteen or more persons for the requisite time." App. to Pet. for Cert. 27. After reviewing the parties' submissions, however, the trial court concluded that neither the delivery drivers nor the owner-managers nor their shareholder spouses qualified as "employees" for Title VII purposes. *Id.*, at 32–43. Based on that determination, the trial court vacated its prior judgment in favor of Arbaugh, dismissed her Title VII claim with prejudice, and her state-law claims without prejudice. *Id.*, at 23.

The Court of Appeals for the Fifth Circuit affirmed. 380 F. 3d 219 (2004). Bound by its prior decisions, the Court of Appeals held that a defendant's "failure to qualify as an 'employer' under Title VII deprives a district court of subject matter jurisdiction." *Id.*, at 224 (citing, *e.g.*, *Dumas* v. *Mt. Vernon*, 612 F. 2d 974, 980 (1980)). Dismissal for want of subject-matter jurisdiction was proper, the Court of Appeals ruled, for the record warranted the con-

clusion that Y&H's delivery drivers, its owner-managers, and their shareholder wives were not "employees" for Title VII purposes, 380 F. 3d, at 225–230, and it was undisputed that Y&H "did not employ the requisite 15 employees without the inclusion of" those persons, *id.*, at 231.

We granted certiorari, 544 U. S. 1031 (2005), to resolve conflicting opinions in Courts of Appeals on the question whether Title VII's employee-numerosity requirement, 42 U. S. C. §2000e(b), is jurisdictional or simply an element of a plaintiff's claim for relief.  Compare, *e.g.*, 380 F. 3d, at 223–225 (Title VII's employee-numerosity requirement is jurisdictional), and *Armbruster* v. *Quinn*, 711 F. 2d 1332, 1335 (CA6 1983) (same), with, *e.g.*, *Da Silva* v. *Kinsho International Corp.*, 229 F. 3d 358, 361–366 (CA2 2000) (Title VII's employee-numerosity requirement is not jurisdictional); *Nesbit* v. *Gears Unlimited, Inc.*, 347 F. 3d 72, 76–83 (CA3 2003) (same); *EEOC* v. *St. Francis Xavier Parochial School*, 117 F. 3d 621, 623–624 (CADC 1997) (Americans with Disabilities Act's employee-numerosity requirement, 42 U. S. C. §12111(5)(A), resembling Title VII's requirement, is not jurisdictional).

## III

"Jurisdiction," this Court has observed, "is a word of many, too many, meanings." *Steel Co.* v. *Citizens for Better Environment,* 523 U. S. 83, 90 (1998) (internal quotation marks omitted).  This Court, no less than other courts, has sometimes been profligate in its use of the term.  For example, this Court and others have occasionally described a nonextendable time limit as "mandatory and jurisdictional."  See, *e.g.*, *United States* v. *Robinson,* 361 U. S. 220, 229 (1960).  But in recent decisions, we have clarified that time prescriptions, however emphatic, "are not properly typed 'jurisdictional.'"  *Scarborough* v. *Principi,* 541 U. S. 401, 414 (2004); accord *Eberhart* v. *United States,* 546 U. S. ___, ___ (2005) *(per curiam)* (slip op., at 4–

7); *Kontrick,* 540 U. S., at 454–455. See also *Carlisle* v. *United States,* 517 U. S. 416, 434–435 (1996) (GINSBURG, J., concurring).

The dispute now before us concerns the proper classification of Title VII's statutory limitation of covered employers to those with 15 or more employees. If the limitation conditions subject-matter jurisdiction, as the lower courts held it did, then a conclusion that Y&H had fewer than 15 employees would require erasure of the judgment for Arbaugh entered on the jury verdict. But if the lower courts' subject-matter jurisdiction characterization is incorrect, and the issue, instead, concerns the merits of Arbaugh's case, then Y&H raised the employee-numerosity requirement too late. Its pretrial stipulations, see *supra*, at 6, and its failure to speak to the issue prior to the conclusion of the trial on the merits, see Fed. Rule Civ. Proc. 12(h)(2), *supra*, at 5, would preclude vacation of the $40,000 judgment in Arbaugh's favor.

On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous. "Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." 2 J. Moore et al., Moore's Federal Practice §12.30[1], p. 12–36.1 (3d ed. 2005) (hereinafter Moore). Judicial opinions, the Second Circuit incisively observed, "often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Da Silva*, 229 F. 3d, at 361. We have described such unrefined dispositions as "drive-by jurisdictional rulings" that should be accorded "no precedential effect" on the question whether the federal court had authority to

adjudicate the claim in suit.  *Steel Co.*, 523 U. S., at 91.

Cases of this genre include *Hishon* v. *King & Spalding,* 467 U. S. 69 (1984), and *EEOC* v. *Arabian American Oil Co.,* 499 U. S. 244 (1991).  *Hishon* involved a Title VII claim brought by a lawyer denied partnership in a law firm.  The District Court ruled that Title VII did not apply to the selection of partners and dismissed the case for lack of subject-matter jurisdiction.  The Court of Appeals affirmed that judgment.  We noted that the District Court's reasoning "ma[de] clear that it dismissed petitioner's complaint on the ground that her allegations did not state a claim cognizable under Title VII."  467 U. S., at 73, n. 2.  Disagreeing with the lower courts, we held that Title VII applies to partnership decisions.  *Id.*, at 73–78.  That holding, we said, "ma[de] it unnecessary to consider the wisdom of the District Court's invocation of Rule 12(b)(1), as opposed to Rule 12(b)(6)."  *Id.*, at 73, n. 2.  The former Rule concerns subject-matter jurisdiction, the latter, "failure to state a claim upon which relief can be granted." See *supra*, at 5.  Our opinion in *Hishon* thus raised, but did not decide, the question whether subject-matter jurisdiction was the proper rubric for the District Court's decisions.[7]

In *Arabian American Oil Co.*, we affirmed the judgment of the courts below that Title VII, as then composed, did not apply to a suit by a United States employee working

————————

[7] Y&H features *Walters* v. *Metropolitan Ed. Enterprises, Inc.,* 519 U. S. 202 (1997), as supportive of the jurisdictional character of the employee-numerosity requirement.  Brief for Respondent 8–10.  Y&H urges that the Court must have considered the requirement jurisdictional, for *Walters* held definitively that, under the correct legal standard, the defendant had more than 15 employees.  If the requirement had been seen as a merits issue, Y&H contends, the Court would have remanded the employee count for determination by the trier of fact.  But the parties in *Walters* apparently stipulated to all relevant facts, leaving nothing for a fact trier to resolve on remand.  Cf. 519 U. S., at 211–212.

abroad for a United States employer.[8] That judgment had been placed under a lack of subject-matter jurisdiction label. We agreed with the lower courts' view of the limited geographical reach of the statute. 499 U. S., at 246–247. *En passant*, we copied the petitioners' characterizations of terms included in Title VII's "Definitions" section, 42 U. S. C. §2000e, as "jurisdictional." See 499 U. S., at 249, 251, 253. But our decision did not turn on that characterization, and the parties did not cross swords over it. See *Steel Co.*, 523 U. S., at 91 (declining to follow a decision treating an issue as jurisdictional because nothing "*turned upon* whether [the issue] was technically jurisdictional" in that case). In short, we were not prompted in *Arabian American Oil Co.* to home in on whether the dismissal had been properly based on the absence of subject-matter jurisdiction rather than on the plaintiff's failure to state a claim. 499 U. S., at 247.[9]

The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U. S. C. §§1331 and 1332. Section 1331 provides for "[f]ederal-question" jurisdiction, §1332 for "[d]iversity of citizenship" jurisdiction. A plaintiff properly invokes §1331 jurisdiction when she pleads a colorable claim "arising under" the Constitution

---

[8] Congress subsequently amended Title VII to extend protection to United States citizens working overseas. See Civil Rights Act of 1991, §109(a), 105 Stat. 1077, codified at 42 U. S. C. §2000e(f) ("With respect to employment in a foreign country," the term "employee" "includes an individual who is a citizen of the United States.").

[9] In *EEOC* v. *Commercial Office Products Co.,* 486 U. S. 107 (1988), also featured by Y&H, see Brief for Respondent 12, a plurality of this Court noted that "[r]eactivation of state proceedings after the conclusion of federal proceedings serves [a] useful function," in part because "Title VII does not give the EEOC jurisdiction to enforce the Act against employers of fewer than 15 employees." 486 U. S., at 119, n. 5. That fleeting footnote addressed the relative administrative provinces of the EEOC and state agencies. It did not speak of federal-court subject-matter jurisdiction, which was not at issue in the case.

or laws of the United States. See *Bell* v. *Hood,* 327 U. S. 678, 681–685 (1946).[10]   She invokes §1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. See §1332(a).

Arbaugh invoked federal-question jurisdiction under §1331, but her case "aris[es]" under a federal law, Title VII, that specifies, as a prerequisite to its application, the existence of a particular fact, *i.e.*, 15 or more employees. We resolve the question whether that fact is "jurisdictional" or relates to the "merits" of a Title VII claim mindful of the consequences of typing the 15-employee threshold a determinant of subject-matter jurisdiction, rather than an element of Arbaugh's claim for relief.

First, "subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States* v. *Cotton,* 535 U. S. 625, 630 (2002). Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. *Ruhrgas AG* v. *Marathon Oil Co.,* 526 U. S. 574, 583 (1999). Nothing in the text of Title VII indicates that Congress intended courts, on their own motion, to assure that the employee-numerosity requirement is met.

Second, in some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own. See 5B C. Wright & A. Miller, Federal Practice and Proce-

_____

[10]A claim invoking federal-question jurisdiction under 28 U. S. C. §1331, *Bell* held, may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous." 327 U. S., at 682–683; see *Steel Co.* v. *Citizens for Better Environment,* 523 U. S. 83, 89 (1998). Arbaugh's case surely does not belong in that category.

dure §1350, pp. 243–249 (3d ed. 2004); 2 Moore §12.30[3], pp. 12–37 to 12–38.  If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts.  *Reeves* v. *Sanderson Plumbing Products, Inc.,* 530 U. S. 133, 150–151 (2000).

Third, when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.  See 16 Moore §106.66[1], pp. 106–88 to 106–89.  Thus in the instant case, the trial court dismissed, along with the Title VII claim, pendent state-law claims, see *supra*, at 4, fully tried by a jury and determined on the merits, see App. to Pet. for Cert. 23, 47.  In contrast, when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U. S. C. §1367, over pendent state-law claims.  See 16 Moore §106.66[1], pp. 106–86 to 106–89.

Of course, Congress could make the employee-numerosity requirement "jurisdictional," just as it has made an amount-in-controversy threshold an ingredient of subject-matter jurisdiction in delineating diversity-of-citizenship jurisdiction under 28 U. S. C. §1332.  But neither §1331, nor Title VII's jurisdictional provision, 42 U. S. C. §2000e–5(f)(3) (authorizing jurisdiction over actions "brought under" Title VII), specifies any threshold ingredient akin to 28 U. S. C. §1332's monetary floor.  Instead, the 15-employee threshold appears in a separate provision that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts."  *Zipes* v. *Trans World Airlines, Inc.,* 455 U. S. 385, 394 (1982).  Given the "unfair[ness]" and "waste of judicial resources," App. to Pet. for Cert. 47, entailed in tying the employee-numerosity requirement to subject-matter jurisdiction, we think it the sounder course to refrain from constricting §1331 or Title VII's jurisdictional provision, 42 U. S. C. §2000e–5(f)(3), and to leave the ball in Con-

gress' court. If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional,[11] then courts and litigants will be duly instructed and will not be left to wrestle with the issue. See *Da Silva,* 229 F. 3d, at 361 ("Whether a disputed matter concerns jurisdiction or the merits (or occasionally both) is sometimes a close question."). But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character. Applying that readily administrable bright line to this case, we hold that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue.

\*   \*   \*

For the reasons stated, the judgment of the Court of

---

[11] Congress has exercised its prerogative to restrict the subject-matter jurisdiction of federal district courts based on a wide variety of factors, some of them also relevant to the merits of a case. Certain statutes confer subject-matter jurisdiction only for actions brought by specific plaintiffs, *e.g.*, 28 U. S. C. §1345 (United States and its agencies and officers), 49 U. S. C. §24301(*l*)(2) (Amtrak), or for claims against particular defendants, *e.g.*, 7 U. S. C. §2707(e)(3) (persons subject to orders of the Egg Board); 28 U. S. C. §1348 (national banking associations), or for actions in which the amount in controversy exceeds, *e.g.*, 16 U. S. C. §814, or falls below, *e.g.*, 22 U. S. C. §6713(a)(1)(B), 28 U. S. C. §1346(a)(2), a stated amount. Other jurisdiction-conferring provisions describe particular types of claims. See, *e.g.*, §1339 ("any civil action arising under any Act of Congress relating to the postal service"); §1347 ("any civil action commenced by any tenant in common or joint tenant for the partition of lands where the United States is one of the tenants in common or joint tenants"). In a few instances, Congress has enacted a separate provision that expressly restricts application of a jurisdiction-conferring statute. See, *e.g.*, *Weinberger* v. *Salfi,* 422 U. S. 749, 756–761 (1975) (42 U. S. C. §405(h) bars §1331 jurisdiction over suits to recover Social Security benefits).

Opinion of the Court

Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE ALITO took no part in the consideration or decision of this case.